# APPENDIX.

## COURT OF ERRORS AND APPEALS

OF THE

## STATE OF DELAWARE.

### SEPTEMBER TERM, 1788.

**W. B.,** surviving partner, &c., appellant, *v.* LATIMER, respondent. (*a*)

*Prize jurisdiction.—Effect of verdict.*

In case of a capture on a navigable water, the question of prize or no prize, is within the jurisdiction of the admiralty, though the property seized belong to a citizen of the state in which the capture was made.

Upon a bill of exceptions to another point, and after a general verdict, the court is not bound to consider a judgment by default in replevin, as an affirmance of property.

THE facts, arguments and principles involved in the discussion of this cause, were stated by the first commissioned judge, in the following terms :

DICKINSON, J.—An action of trover was brought by the appellant and his partner, in the court of common pleas, in Kent, for the brig Endeavor and her cargo. There was a general verdict and a judgment for the plaintiff, in that court. The cause was then removed into the supreme court, by a writ of error, and there the judgment of the court below was reversed. The appeal, in this cause, is from that judgment of reversal.

Upon the trial in the county court, the plaintiff gave in evidence, " that the defendant, as marshal of the admiralty, appointed Ralph Walker to take the brig and cargo into his care and possession ; that he did so, and continued possessed thereof, until they were replevied by virtue of the writ of replevin

---

(*a*) I have been presented with the report of this case, and of the next, by the learned and venerable judge who pronounced the judgments of the court; and their intrinsic merit, as well as the respect due to the judge, must render any apology for their publication unnecessary.

W. B. v. Latimer.

in the judgment hereafter mentioned ; and that the defendant, by a warrant in writing, appointed John Dawson, deputy-marshal, &c."

*ii.]          *The plaintiff then offered in evidence, the record of an action of replevin, brought by him and his deceased partner against the said Walker and others, to February term 1782, upon which action, a judgment was entered, at the same term, by default, for the said brig and cargo. The defendant, by his counsel, objected to the same, inasmuch as he was not a party to the action of replevin ; but the court overruled the objection. To this opinion of the court, the defendant's counsel tendered a bill of exceptions, that was sealed by the judges, in which the facts before mentioned, were stated.

Upon the same trial, the defendant gave in evidence, " the transcript of the proceedings in the court of admiralty, by which it appeared, that the brig Endeavor and her cargo, had been condemned in the said court, as lawful prize, to and for the use of the captors, and had been sold by the defendant, as marshal of that court, under that decree. The plaintiff, by his counsel, objected to the operation of said condemnation, inasmuch as the said court of admiralty had not jurisdiction, the said brig and cargo being taken and seized as prize, at Whitehall landing, in Little Duck creek, in the body of Kent county, and belonging, at the time of seizure, to citizens and inhabitants of the said county, which objection, the court held to be sufficient, for the causes above stated." To this opinion of the court, the defendant's counsel tendered a bill of exceptions, afterwards duly sealed, in which the particulars before recited are set forth.

The capture was made, during the late war, in December 1781. It is contended by the counsel for the appellant, " that the action, in this case, against the officer of the court of admiralty, is maintainable, and two principal points are insisted on : 1st. That the court of admiralty had not jurisdiction ; and 2d. That if that court had jurisdiction, yet the judgment in replevin, subsequent to the decree of condemnation, is an affirmance of property in the appellant, of which, as such an affirmance, we are bound to take notice, and thereby to be concluded."

With respect to the first principal point, it is urged, " that the admiralty had not jurisdiction, by any principle of law, because its jurisdiction extends only to acts done upon the high seas ; and in cases of capture, is governed by the law of nations, which can apply only to questions between citizens or subjects of different states or kingdoms ; that it had not jurisdiction, under any resolutions of congress, because they do not reach to the present instance ; that there was but a bare intent to offend ; and that the legislature of this state had directed a particular mode of proceeding, in every such instance, by the act of assembly passed on the 20th day of May 1778."

A great number of cases has been read, in order to show that the
*iii.]          jurisdiction of the admiralty, extends only to acts done *upon the high seas. The same answer may serve for every one of them ; they all relate to causes civil and marine, and not to causes of prize. The question, " prize or no prize, belongs to the jurisdiction of the admiralty, whether the capture be upon the high seas, in ports, rivers or within the body of a county." It is not necessary to inquire how far this doctrine may be extended. The cause now to be determined, is of a capture upon a navigable

W. B. v. Latimer.

water. The decisions in the cases of *Le Caux* v. *Eden, Lindo* v. *Rodney and another, Brown and Burton* v. *Francklyn,* and *Key and Hubbard* v. *Pearce,* have removed every doubt upon this head.

The other branch of this objection is, " that, in cases of capture, the admiralty is governed by the law of nations, which can apply only to questions between citizens or subjects of different states or kingdoms." The law is as clear upon this, as upon the former, part of the objection.

Whether it be, that, in time of war, the usual forms cannot be observed ; or that persons, engaged in enterprises favorable to enemies, are considered as connected with them in councils and interests ; or that, as the welfare of a society depends on the issue of the war, therefore, the endeavors of the well-affected, amidst uncertainties and dangers, to guard the public happiness, give a peculiar sanction to their exertions, it is evident, that, upon captures as prize, the admiralty proceeds against the property taken, though it belongs to citizens or subjects of the state or kingdom, by the authority of which the court is established. If this rule be deemed essential to the general weal, in common wars, arising, perhaps, from disputes about borders, distant territories, or commercial benefits, how much more occasion is there for such vigilance and strictness, in a war like the last, a war of invasion, piercing into the heart of a country, and involving in its event, the freedom of a whole people and their posterity.

In the cases before referred to, not to mention any more, Brown and Burton were English subjects, and Key and Hubbard, Le Caux and Lindo, were British subjects. Thus, that law from which our jurisprudence is derived,(a) stands established, by a multitude of judicial determinations, for several ages. The courts of admiralty, in these states, proceed in the same manner. The court of admiralty, in this state, condemned a vessel, taken in Jones's creek, within the body of Kent county, and belonging to an inhabitant thereof ;(b) yet no objection, that *we have ever [*iv. heard of, was made to the jurisdiction of the admiralty.

Here, it may be proper to recollect, that, in the present instance, the court of common pleas expressly held the objection of the appellant's, then plaintiff's, counsel, against the operation of the condemnation in the admiralty, " to be sufficient, because that court had not jurisdiction, inasmuch as the brig and cargo were taken and seized as prize, at Whitehall, in Little Duck creek, in the body of Kent county, and belonging, at the time of seizure, to citizens and inhabitants of said county."

The next allegation of the counsel for the appellant is, "that the court of admiralty had not jurisdiction, under any resolutions of congress ;" particularly referring to those of the 25th of November 1775, and the 23d of March 1776. The second of the resolutions, in November, provides, that " all transport vessels, in the British service, &c., and all vessels, to whomsoever belonging, that shall be employed in carrying provisions, &c., to the

---

(a) By the 25th section of our constitution, "the common law of England, and so much of the statute law as has been heretofore adopted in practice, shall remain in force. unless they shall be altered, &c."

(b) The facts here mentioned, that the vessel was taken in Jones's creek, within the body of Kent county, and belonged to an inhabitant thereof, were stated in the libel of Barret and others.

W. B. v. Latimer.

British army or navy, &c., shall be liable to seizure, and, with their cargoes, shall be forfeited." By the fourth, it is "recommended to the legislatures of the United Colonies, to erect courts of justice, or give jurisdiction to the courts now in being, for determining concerning the captures to be made as aforesaid, all trials in such cases to be had, by a jury, &c." By the fifth, "all prosecutions shall be commenced in the court of that colony, in which the captures shall be made ; but if no such court be at that time erected, in the said colony, or if the capture shall be made on open sea, then the prosecution shall be in the court of such colony as the captor may find most convenient, &c." By the sixth, "an appeal, in all cases, shall be allowed to congress, or such persons as they shall appoint, &c."

By the fifth of the resolutions, in March, it is determined, that all vessels, &c., belonging to the inhabitants of Great Britain as aforesaid, and all vessels which may be employed in carrying supplies to the ministerial armies, which shall happen to be taken near the shores of any of these colonies, by the people of the country, or detachments from the army, shall be deemed lawful prize ; and the court of admiralty, within the said colony, is required, on the condemnation thereof, to adjudge payment of charges, and distribution, &c."

It is said, "that if the words 'all vessels,' and 'all vessels to whomsoever belonging,' can be construed to extend to vessels owned by inhabitants of the United States, then colonies, yet the first set of resolutions wholly respects a condemnation upon trial by jury, and the second set, captures 'near the shores of any colony,' circumstances very different from those of the present instance ; and both sets have regard, solely, to. vessels *employed in carrying, &c., though here, at most, was only a design of carrying."

*v.]

The best way of discovering how far arguments, deduced from resolutions of congress, can be applied on this occasion, will be, to consider them, not separately, but conjointly, as forming a system, that existed in force at the time of the transaction. On the 8th of January 1780, long before the capture of the Endeavor, it was resolved by congress, "that the trials in the courts of admiralty, in cases of capture, be according to the usage of nations, and not by jury." It does not appear that any other material part of the foregoing resolutions in 1775 and 1776, was repealed. Therefore, the powers intended, in those resolutions, to be exercised by the courts of admiralty, remained ; only the mode of exercising them was altered. The obligation of any of these resolutions has not been, and will not be, denied. Of course, the exception taken to the resolution of 1775, does not, in any manner, impeach the regularity of the proceedings in this cause.

As to the exception, founded upon these words, in the resolutions of 1776, "near the shores of any of the colonies ;"(a) it would be a very singular distinction, if vessels, engaged in hostile projects, should be liable to seizure and condemnation, below the mouth of a river or creek, and should gain protection, by entering into it, for the very purpose of more effectually

---

(a) The libel of Barret and others, against the vessel, taken in June 1778, and afterwards condemned, stated that she was taken in "Jones's creek, and near the mouth thereof, in Kent county." This libel also set forth the resolution of congress on the 28d of March 1776, as the foundation of the prosecution.

carrying them on ; especially, if it be considered, that congress certainly intended the resolutions of 1775 and 1776, to agree and co-operate. They did not undertake to say, that " the shores " of any colony, were the limits of that colony ; and they expressly speak, in the 5th resolution of 1775, of captures made " in " a colony.

The exception taken against both sets of resolutions, states, that "they have regard solely to vessels employed in carrying, &c., and that here, at most, was only a design of carrying ;" or, in other words, that the offence was not committed, but only intended.(*a*)  On the other hand, it is set forth by the judge, in his decree, that the fixed design of the appellant and his partner, through all the transactions relating to this vessel, was to carry her and her cargo to New York, then in the possession of the British fleet and army ; and that they had obtained a passport from the admiral, who was there, for this purpose ; and it appears, from the plea and answer of the appellant, in the court of admiralty, and from other parts of the proceedings, that the brig Endeavor had *been purchased at Lewes Town, brought into Little Duck creek, as far up as Barker's landing, had [*vi. there received a considerable part of her cargo, and then went down several miles to the place where she was captured. If she was going to New York, surely she was " employed in carrying supplies to the British army."

This point has been deemed very important, and many ingenious arguments have been offered upon it.  One remark may, perhaps, throw some light upon the subject.  Whether the Endeavor was " employed in carrying supplies to the British army," is a question of fact.  This court is now sitting to correct errors in law, " as was allowed under the old government in the last resort, to the king in council."(*b*)  The cause now depending comes before us, after a removal into the supreme court, by a writ of error, upon a general verdict, and a judgment thereon below.  Must there not be some great deviation from legal principles, in the method proposed for the decision of this business, since it leads to so extraordinary a conclusion, that, instead of being judges to determine what the law is, we are, in a case thus circumstanced, to become an imperfect jury, for the re-trial of a matter of fact ?

The last objection of the appellant's counsel, comprehended in the first principal point, is, " that the legislature of this state, has directed a particular mode of proceeding, in every such instance as the present, by an act of assembly, passed on the 20th day of May 1778."  By that act, " all provisions and supplies loaden on board any vessel or other carriage, in any place or port within the state, to the intent, &c., to be conveyed, &c., to or from the enemy, &c., shall be forfeited, with the craft, &c., carrying the same, to the use of the captors ; and two justices of the peace of the county where such capture happens, may adjudge a forfeiture, and order sale, &c."  Proceedings have been, accordingly, had, at least, in one instance, at New Castle, in July 1782.

At the time of making this law, the court of admiralty was subsisting in this state.  Public acts and dates may here be material.  In less than four

---

(*a*) The intention of supplying an enemy, manifested by such circumstances as in this case, is clearly criminal, at common law.  Foster 217.

(*b*) Words of the act of assembly establishing the court of appeals.

W. B. v. Latimer.

months after the resolutions in March 1776, the declaration of independence was made. In less than three months from that time, with the same spirit of federalism, that has, on so many occasions, directed the conduct of this state,(a) our constitution was framed, candidly recognising the authority of "resolutions of congress," and among other things, requiring "a judge of admiralty." A judge was soon after appointed. It is not to be supposed, that in the long interval, between November 1775, when congress *vii.] recommended the establishment of courts, for condemnation of captures, taken in any part of united America, as well as elsewhere, until May 1778, when this act of assembly was made, there was no court here, vested with correspondent powers. The court of admiralty had cognisance in such cases. Principles of law, and the circumstances of our situation, required that it should have cognisance.

In that act, are no words that, positively, or by necessary implication, take away any authority then existing in another tribunal. The general assembly might think it advisable, in aid of that authority, to diffuse the jurisdiction given by the act, throughout every part of the state, among the justices of the peace, as the offences might be numerous, and it would, sometimes, be exercised upon occasions of very trifling moment. The law is clear, that where a court has jurisdiction in certain cases, and afterwards jurisdiction therein is given to another court, this provision is only cumulative, not privative; it does not abrogate the authority of the first; but both have a concurrent jurisdiction. (1 Black. Com. 89, 90.)

There was another question, moved in the course of argument, that seems not properly referable to either of the two principal points before mentioned. Several cases were produced to show, that "it is necessary in every suit in the admiralty, to allege in the libel, that the cause of action arose upon the high seas." One distinction solves all difficulties on that question. In causes civil and marine, such an allegation may be necessary; in causes of prize, it is not. 2 Douglas 608.

Thus far, induced by particular considerations, have we pursued the way marked out by the appellant's counsel, for examining this cause, of much importance, and of the first impression among us. Where does it begin, and to what does it lead? From a supposed right, in a court of common law, of scrutinizing, in an action of trover, a decree of the admiralty, in a cause of prize, after execution; to a power of reversing it in effect. Not a case has been produced by the learned counsel, to support this doctrine. It has been said, indeed, that "the capture, being within the body of a county, is properly triable in a court of common law, especially, where only citizens are concerned." There is no difference of this kind, upon captures as prize. It is well known, with what vigilance the judges in Westminster Hall have watched the admiralty jurisdiction, and with what vigor they have checked it, when unduly exercised. Yet, for this purpose, they never availed themselves of the circumstances now suggested. Besides, there are causes, triable by jury, that originate out of the county, and out of the state, in which the trial is had. Where, then, is their power, in causes of prize, to stop? It is likely, that more respect will be paid to the sentence of another

---

(a) The constitution was agreed to, the 10th of September 1776.

W. B. v. Latimer.

court of admiralty, than to that of our own? And ought not the *complaint of a stranger, a neutral, a friend, to be as much regarded in our courts of justice, as that of an inhabitant? If once such a contest shall be opened, between the jurisdiction of admiralty courts of prize, and that of common-law courts, courts founded upon different principles, and governed by different codes, it would be almost impossible to describe the confusions and mischiefs that must inevitably follow. The evil will appear to be still increased, if it be considered that this contest would be carried on, by a number of common-law courts, in several states, against an admiralty jurisdiction, necessarily blended with the very nature of their federal union.(a) The law delights in certainty and quiet, because, without these, there can be no liberty.

Much has been said in praise of trial by jury, and as much against admiralty courts, "in each of which," it has been alleged, "a single judge presides, who may draw actions into his jurisdiction, by giving them what name he chooses, and decree in them as he pleases." If any citizen of United America does not value trial by jury, at its justly high worth, he is incapable of duly estimating any of his political rights. But if, by the constitution and laws of our country, a jurisdiction is to be exercised in another manner, it is our duty to observe the constitution and laws, without perplexing ourselves by reflections on the excellency of trial by jury. Congress, after the experience of several years, found it requisite to resolve, that trials in the admiralty courts, in cases of captures, should not be by jury. And it is to be noticed, that the act of assembly, under which, it is contended, by the appellant's counsel, that this cause ought to have been tried, gives neither trial by jury, nor an appeal.(b)

Our constitution requires, to use its own words, "the appointment of a judge of admiralty." Our laws acknowledge his authority. Such a jurisdiction was established, throughout the British parts of this continent, before the revolution, and exists in every Christian maritime state and kingdom in Europe. The ease, the cautions, the dispatch, under this jurisdiction, are attended, in time of war, with great benefits to captors, claimants and all parties concerned.

*Admitting the government of a free state to be so degraded, that [*ix. the "judge of the admiralty appointed by the joint ballots of the president and general assembly," as he is in this state, wants the integrity and knowledge he ought to possess, yet his irregularities are subjected to an immediate and effectual correction : for, by the resolves of congress, an appeal is given to that body, or to the persons by them delegated.

When, to the care of that assembly, under Providence, the inhabitants of these states committed their liberties, lives and fortunes, surely there is no impropriety in supposing, that they might safely have been trusted to decide

---

(a) This is evident from the confederation; and before that was completely ratified, commissions to vessels of war, and instructions, were issued by congress, bonds were given to them, and appeals were reserved to them. These powers rested upon the same principles with those, by which congress was authorized to begin, and prosecute, the late war, thoroughout its various operations. To question the validity of those powers, would seem, plainly, to impeach the justice of those operations.

(b) There was a condemnation, without trial by jury, of the vessel taken by Philip Barret and others, in 1778.

W. B. v. Latimer.

on such a case as the property of the Endeavor and her cargo. Yet this plain and easy method of obtaining redress, if any injury had been done, a method agreed to, upon the maturest deliberation, by United America, has been declined, and the courts of common law, in this state, are to be engaged in trying causes of prize.

Let us now attend to the sentiments of judges, (a) eminently distinguished for their abilities and learning upon this subject.   "The admiralty has jurisdiction, not only of the question, prize or no prize, but of all its consequences: this jurisdiction belongs to the admiralty, totally and exclusively ; and the courts of common law have no jurisdiction at all, in such questions."

"Though for taking a ship on the high seas, trespass would lie, at common law, yet, when taken as a prize, though taken wrongfully, though it were acquitted, and though there were no color for the taking, the judge of the admiralty was judge of the damages and costs, as well as of the principal matter ; and if such actions should be brought at common law, on plea of not guilty, the plaintiff could not recover."

"It is true, the sentence of acquittal in the admiralty, is conclusive, that the ship was not lawful prize : but it is evidence of a thing, which a court of common law cannot inquire into.   If the original taking be not a trespass cognisable at common law, the sentence of the admiralty court cannot give a jurisdiction to a court of common law, which it had not before."   Douglas.

"The validity of a sentence, by a court of admiralty, in a cause of prize, is not determinable by the common law."   *Saunders, Redley and Dalbow* v. *Egglesfield and Whitall.*

Though the superior courts of common law, so strictly superintend the conduct of the admiralty, yet, "there is not one instance where a prohibition was ever granted in a cause of prize."   The case of *Brown and Burton* v. *Franklyn*, in the time of William III., is remarkable in this respect.   On motion for a prohibition, the plaintiffs suggested, that the defendant, *being the king's proctor, had libelled in the admiralty concerning a ship and cargo, &c., whereas, the ship was a wreck in the East Indies, and that there had been a sentence in the admiralty that all was prize ; and that, upon this sentence, the defendant libelled against the plaintiffs, charging them with embezzlement, &c.   The court inclined, that the plaintiffs ought to have an opportunity to be heard, and to controvert the matter of fact ; but after hearing Dr. Lane, a civilian, and considering that, upon an appeal, the appellants would be let in to controvert the right, and to disprove the prize ; and that prize or no prize, was a matter not triable at common law, but altogether appropriated to the jurisdiction of the admiralty, the prohibition was denied."   Carth. 398, 474.

"The question, prize or no prize, is the boundary line."   "The true reason why the jurisdiction is appropriated to the admiralty, is, that prizes are acquisitions *jure belli ;* and *jus belli* is to be determined by the law of nations, and not by the particular municipal laws of any country."

"The jurisdiction of a court of admiralty, generally, is limited to matters arising upon the high seas, and is, in that respect, local ; but it is not so in cases of prize ; for in them, the jurisdiction does not depend on the locality,

*(a)* Hale, Holt, Lee, Mansfield, Buller, with the unanimous assent of their brethren, the other judges.

but the nature, of the question, which is such as it not to be tried by any rule of the common law, but by a more general law." Douglas.

If the validity of a sentence by a court of admiralty in a cause of prize, is not determinable by a court of common law ; if, even after an acquittal by the admiralty, declaring the ship to be no prize, an action at common law is not maintainable for the capture, or for any transaction in consequence of it, certainly the proceedings in the court of common pleas, are not warranted by law.

We now proceed to the second principal point. It is contended by the counsel for the appellant, " that if the court of admiralty had jurisdiction, yet the judgment in replevin being subsequent to the decree of condemnation, is an affirmance of property in the appellant, of which, as such an affirmance, we are bound to take notice, and thereby to be concluded." As this assertion, if well founded, will be productive of very important effects, it deserves a strict investigation.

If the court of admiralty had jurisdiction of the original cause, that is, of the capture as prize, it is equally plain, from the books, that it had jurisdiction of all consequences, to the exclusion of every court of common law. The action of replevin, for the Endeavor and her cargo, ought not, therefore, to have been brought. The court of common pleas had no jurisdiction in the case. Again, if the court of admiralty had jurisdiction, an injury was done to the respondent, by the determination of the common pleas, that the court of admiralty had not jurisdiction ; *and if, by the judgment in [*xi. replevin, we are estopped from relieving him, though he applies to us for relief, in a legal manner, here is an injury that must for ever remain without a remedy ; which the law justly abhors.

These irregularities may be set right, by a due arrangement of the several parts of this cause. On the trial in the common pleas, the respondent tendered two bills of exceptions. In one of them, he objected to the record in the action of replevin being given in evidence against him, " inasmuch as he was not a party to the same : but the court overruled the objection." On this point, their judgment, supposing they had jurisdiction, appears to have been regular. In the other, he objected to the decision of the judges, that " the court of admiralty had not jurisdiction."

These bills are separate ; these objections are distinct. If, on either of them, an erroneous decision was given, wrong was done to the respondent, or, to express it in other words, that was dealt out to him for law, that was not law : yet it is urged by the appellant's counsel, that they ought to be considered together, as utterly to deprive the respondent of all benefit by the last. (a)

The question before us, is not, whether a judgment by default in replevin, is an affirmance of property : but whether, in the present instance, we are obliged to consider it as such an affirmance. The judgment in replevin, was merely a piece of evidence given to the jury ; it had its effect, mingled with other evidence, in the general verdict. It is impossible for us, with any respect for substantial justice, to separate it from the other evidence,

---

(a) If, upon a trial, a party takes several bills of exception; and upon a writ of error, succeeds in supporting only one of them, the judgment below is to be reversed, because he was injured by this decision against him, though he was not by the rest.

shut up in that verdict, because it is impossible for us to determine, what effect the proceedings in the court of admiralty would have had upon the jury, if the judges of the common pleas had not condemned them, by deciding, that "the court of admiralty had not jurisdiction." In what inextricable confusion should we involve the merits of this cause, by regarding the judgment in replevin, as an affirmance of property in the appellant, superseding every other consideration?

The question before us, on this point, finally resolves itself into the same that was before the judges of the common pleas, that is, whether the judgment in replevin, was regularly admissible as evidence, "inasmuch as the respondent was not a party to it," not, what was its legal operation on the property in contest. The law is clear, that "a bill of exceptions is not to draw the whole matter into examination again. It is only for a single

xii.] point."(a)  *Not one case has been produced, by the learned counsel for the appellant, to show, that, upon a bill of exceptions to another point, and after a general verdict, we are bound to consider a judgment by default in replevin, brought before us, as this is, as an affirmance of property; though struck with the position, we desired that such a case, if to be found, might be produced. Not a case has been offered, that can, by any analogy, be made to maintain the inference drawn in behalf of the appellant.

The judgment of the supreme court affirmed

---

(a) Evidence is to be given in open court, in the presence of the parties, their attorneys, the counsel, and all by-standers, and before the judge and jury; each party having liberty to except to its competency, which exceptions are publicly stated, and by the judge are openly and publicly allowed or disallowed, in the face of the country; which must curb any secret bias or partiality that might arise in his own breast. If, either in his directions or decisions, he mis-states the law, by ignorance, inadvertence or design, the counsel on either side may require him, publicly, to seal a bill of exceptions, stating the point wherein he is supposed to err. 3 Blackstone 372; Buller 310.